September 19, 2018

**VIA ECF**
Hon. Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:   *Jose Miranda, et al. v. Watral Brothers, Inc., et al.*
             Docket No.: 17-cv-05797 (JMA) (GRB)

Dear Judge Azrack:

      This firm represents the Plaintiffs, Jose Miranda and Jose Rodas-Sorto (collectively as "Plaintiffs"), as well opt-in Plaintiff Carlos E. Leon, in the above-referenced matter, who brought claims against Defendants Watral Brothers, Inc., Watral Contracting Corp., Watral & Sons, Inc., Thomas Watral and John Watral.[1] In their Amended Complaint, Plaintiffs bring claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), unpaid prevailing wage compensation as third-party beneficiaries of certain covered contracts, failure to provide accurate wage notices at their time of hire pursuant to NYLL § 195(1), and failure to issue accurate wage statements pursuant to NYLL § 195(3). D.E. 6. Plaintiffs Miranda and Rodas-Sorto submit this joint motion on behalf of all parties, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiffs' FLSA claims, a copy of which is attached hereto as Exhibit A.[2]

**Procedural History**

      On October 3, 2017, Plaintiff Miranda filed his Complaint. D.E. 1. On October 9, 2017, Miranda filed an Amended Complaint adding Rodas-Sorto as a named Plaintiff. D.E. 6. On October 18, 2017, Defendants filed an Answer to the Amended Complaint. D.E. 13. On January 16, 2018, Your Honor entered an order certifying this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b). D.E. 18. The parties exchanged written discovery

---

[1] On July 6, 2018, opt-in Plaintiff Leon separately accepted and filed an Offer of Judgment pursuant to Fed. R. Civ. P. 68, D.E. 25, which the Clerk of Court entered on July 16, 2018. D.E. 26. As such, this motion for approval pertains only to Plaintiffs Miranda and Rodas-Sorto.

[2] The parties do not seek the Court's approval with respect to the settlement of Plaintiffs' non-FLSA claims as there is no requirement for them to do so. However, the settlement of Plaintiff's claims arising under the New York Labor Law and breach of contract claims are included in the attached agreement.

and documents pertaining to the Plaintiffs' claims.  Subsequently, on May 10, 2018, the Court referred this matter for mediation through the EDNY mediation program.

On June 19, 2018, the parties participated in an unsuccessful full-day mediation conducted by Michael A. Levy. See D.E. 24.  On July 2, 2018, the parties participated in a second, successful mediation before Mr. Levy, reaching a settlement in principle after contentious, arms-length negotiations.  Thereafter, the parties engaged in additional negotiations pertaining to certain terms of the parties' settlement agreement.  The parties' settlement agreement provides for payment of a sum of $290,000 in six monthly installments.  Pursuant to that settlement, Miranda will receive $103,972.32, Rodas-Sorto will receive $88,195.51, and Plaintiffs' counsel will receive $97,832.17, which is comprised of $96,083.92 for fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $1,748.25 for costs.[3]  This settlement is secured by confessions of judgment signed by all Defendants in the event of a default.

## **Factual Background**

Defendants are a Long Island-based company and its owners that provide primarily excavation and demolition services as a contractor for private and public works projects in New York.  Defendants employed Miranda as a laborer from on or about April 16, 2011 until on or about September 26, 2017.  During that time, Miranda claims he generally worked six days per week from 6:30 a.m. until 7:00 p.m., and asserts Defendants failed to provide him with an uninterrupted meal period during each shift.  Accordingly, Miranda contends he typically worked 72.5 hours per week.  Throughout his employment, Miranda contends that Defendants paid him a weekly salary of $600.00, whereas Defendants contend Miranda was paid a weekly compensation range of $520.00 in 2011 to $1,000.00 in 2017.  Miranda claims his salary was intended to compensate him only for his first forty hours of work per week.  Miranda alleges Defendants did not pay him any compensation for his overtime hours worked each week, despite claiming that he regularly worked approximately 32.5 hours of overtime per week.  The Defendants have vehemently denied that Miranda worked any overtime based upon Defendants' recordkeeping as well as the seasonal nature of Defendants' construction business which limits the number of hours that workers are able to work outside due to weather related issues, job interruptions and sunlight.

Defendants employed Rodas-Sorto as a laborer from on or about July 28, 2012 until on or about June 16, 2017.  During that time, Rodas-Sorto claims he generally worked six days per week from 6:30 a.m. until 7:00 p.m., and asserts Defendants failed to provide him with an uninterrupted meal period during each shift.  Accordingly, Rodas-Sorto contends he typically worked 72.5 hours per week.  Throughout his employment, Rodas-Sorto contends that Defendants paid him a weekly salary of $720.00, whereas Defendants contend that Miranda was paid a weekly compensation range of $520.00 in 2011 to $1,000.00 in 2017.  Rodas-Sorto claims his salary was intended to compensate him only for his first forty hours of work per week.  Rodas-Sorto alleges Defendants did not pay him any compensation for his overtime hours worked each week, despite claiming that he regularly worked approximately 32.5 hours of overtime per week.  The Defendants have vehemently denied that Rodas-Sorto

---

[3] Plaintiffs are each receiving a proportional share of the Plaintiffs' portion of the settlement fund based on their total potential damages for all claims, not just their FLSA claims.

worked any overtime based upon Defendants' recordkeeping as well as the seasonal nature of Defendants' construction business which limits the number of hours that workers are able to work outside due to weather related issues, job interruptions and sunlight.

Throughout their employment, Defendants issued Plaintiffs Miranda and Rodas-Sorto paychecks that reflect hourly pay for forty hours of work each week.[4]  However, Plaintiffs allege these paychecks were false.  Indeed, Plaintiffs assert Defendants consistently required them to endorse these paychecks and permit Defendants to deposit the funds back into the company's own accounts.  Then, Plaintiffs contend Defendants paid Plaintiffs a weekly salary in cash that did not include any compensation for overtime.  The Defendants have vehemently denied that Plaintiffs' paychecks were false and/or that Plaintiffs were required to endorse these paychecks and permit Defendants to deposit the funds back into the company's own accounts.

**The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207.  "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted).  Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id*.

Here, during their employment generally, and specifically during the relevant FLSA period, Plaintiffs contend that they worked as non-exempt laborers and were not paid overtime compensation at time and one-half their regular rates of pay for each hour worked in excess of 40 per week under the FLSA, despite working approximately 32.5 hours of overtime each week.  Plaintiffs also claim liquidated damages due under the FLSA.

In contrast, Defendants deny all of Plaintiffs' claims and maintain that they paid Plaintiffs all wages required under the FLSA.  Moreover, Defendants dispute the number of hours worked by Plaintiffs and, were a settlement not reached, intended to offer several of Plaintiffs' former co-workers as non-party witnesses to discredit Plaintiffs' claimed hours worked.  Defendants also contest the method of assessing damages in this matter, if Plaintiffs were to establish liability, contending that Plaintiffs' salaries are intended to cover all hours

---

[4]Plaintiffs contend that Defendants did not record their hours worked throughout their employment.

worked and that overtime damages should therefore be assessed based on a half-time method, which would substantially reduce the amount of damages owed. Defendants further assert that Plaintiffs are not entitled to liquidated damages as they acted in good faith at all times, which, if proven, would further limit Plaintiffs' potential recovery.

Thus, the parties' respective positions evince substantial risks for both parties at trial. For instance, were the trier of fact to credit all of Plaintiffs' evidence and were to adopt all of Plaintiffs' legal arguments with respect to damage calculations, Miranda's potential recovery under the FLSA for unpaid overtime compensation amounts to $113,448.21 or, if a half-time assessment is instead applied, amounts to only $20,864.04. Similarly, Rodas-Sorto's potential recovery under the FLSA for unpaid overtime compensation amounts to $122,599.39 or, if a half-time assessment is instead applied, amounts to only $22,547.00. Thus, the legal dispute regarding the proper manner to assess damages alone constitutes a meaningful risk to both parties, without even considering the many factual disputes.

Moreover, settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in depositions of Plaintiffs, Defendants, and several non-party witnesses. This settlement also avoids potential summary judgment motion practice by either party and trial, which would result in a months' or years' long delay to obtaining a recovery for the Plaintiffs even if they are successful at trial. Moreover, all parties face the risk of losing at trial, either in whole or in part. Indeed, if Plaintiffs were to succeed on liability but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiffs would not be entitled to liquidated damages under the FLSA. This would be reduced further should Plaintiffs not prevail on the issue of willfulness or that a half-time calculation should be used to assess damages. Thus, by settling at this stage, Plaintiffs ensure they will receive a recovery in this matter. Further, Plaintiffs' award under the settlement permits them to recover the vast majority of their claimed damages under the FLSA and, were the Court to apply a half-time calculation, Plaintiffs' award is equal to several times their available damages under the FLSA.

Accordingly, although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Moreover, Plaintiffs will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Additionally, the settlement here was reached only after the parties engaged in document discovery pertaining to the Plaintiffs, providing them with a clear assessment of their available damages, and after two mediations with the assistance of mediator Michael A. Levy, Esq. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiffs' release in paragraph 6 of the Settlement Agreement is limited to the wage-related claims that Plaintiffs asserted in this action and potential claims for discrimination under Title VII, the New York State Human

Rights Law, and New York City Human Rights Law. While claims of discrimination are not asserted in the Amended Complaint, such claims were discussed during settlement negotiations, leading to the final resolution of this matter. Therefore, the release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See* Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F.Supp.3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, this release is narrowly tailored to release only claims relevant to the instant action and those relevant to the parties' settlement negotiations. Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F.Supp.3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F.Supp.3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181).

Finally, the parties' settlement agreement contains a limited, permissible non-disparagement clause in Paragraph 7. To be permissible, a non-disparagement clause must include, as the parties' settlement agreement does in this matter, "a carve-out for truthful statements about plaintiffs' experience litigating their case. Otherwise, such a provision contravenes the remedial purposes of the statute and, in this context, is not 'fair and reasonable.'" Lopez, 96 F. Supp. 3d at 180 n.65; Gomez v. Midwood Lumber & Millwork, Inc., 2018 WL 3019877, at *6 (E.D.N.Y. June 17, 2018) (citing Lopez, 96 F. Supp. 3d at 180 n.65) (approving a non-disparagement clause that "expressly carves out plaintiff's 'communication rights under the FLSA', which the court interpret[ed] to include plaintiff's ability to make truthful statements about his experience litigating this case"); Snead v. Interim HealthCare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018) (quoting Lazaro-Garcia v. Sengupta Food Servs., 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015); and citing Geskina v. Admore Air Conditioning Corp., 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017); and Cortes, 2016 WL 3455383, at *4) (noting non-disparagement clause "'must include a carve-out for truthful statements about plaintiffs' experience litigating their case'" and approving settlement agreement with non-disparagement clause permitting "truthful statements related to or concerning the Action"); Cortes, 2016 WL 3455383, at *4 (citing *Lazaro-Garcia*, 2015 WL 9162701, at *3) ("although the Agreement contains a non-disparagement provision, it includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case"). Moreover, courts have approved non-disparagement clauses similar to the one presented in the instant settlement agreement in other FLSA settlement agreements. Lazo v. Empire Mgmt. Am. Corp., Docket No. 17-cv-07645-ER, D.E. 9-1, 10 (S.D.N.Y. April 3, 2018); Greene v. Metro Indus. Wrecking & Envtl. Contractors, Inc., Docket No. 16-cv-06543-KAM-RLM, D.E. 32-1, 35 (E.D.N.Y. October 31, 2017). Thus, the non-disparagement clause should be approved and this motion granted.

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336).[5]  When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $96,083.92, or 1/3 or the net settlement amount after deducting for litigation costs, and an additional amount of $1,748.25 for litigation costs incurred.  Plaintiffs' counsel's request that the Court approve fees of 1/3 of the settlement is "consistent with the trend in this Circuit." Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases).  Courts in this Circuit routinely approve attorney's fees awards in the amount of one-third of the total settlement. See McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Meza v. 317 Amsterdam Corp., No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 09, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs).  Thus, a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

Here, Plaintiffs' counsel researched and investigated the Plaintiffs' claims, conducted an in-depth and detailed inquiry regarding Plaintiffs' job duties, exempt status, their work hours and compensation received, commenced this action, exchanged written and document

---

[5] Despite this practice by certain Courts, Judge Pittman has found as follows: "I do not address the fee arrangement between plaintiff and their counsel because I do not believe I am required to do so under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016).  As described in *Cheeks*, the purpose of the FLSA is to regulate the relationship between an employee and her employer and to protect the employee from over-reaching by the employer. 796 F.3d at 206.  I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney." Barbecho v. M.A. Angeliades, Inc., 2016 WL 3524066, at *2 n.4 (S.D.N.Y. June 21, 2016).

discovery, obtained conditional certification of the collective action and circulated notice pursuant to 29 U.S.C. § 216(b), and negotiated a settlement during two mediations. Due to the contingent nature of the case, Plaintiffs' counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiffs' counsel was zealous in the pursuit of Plaintiffs' litigation objectives and secured a favorable result on the Plaintiffs' behalf. The settlement will be made available to the Plaintiffs without the uncertainty and delay of trial.

Accordingly, Plaintiffs' counsel's request for $96,083.92 as compensation for their work and expenses in the amount of $1,748.25 in this matter is entirely reasonable.

## Conclusion

In light of the foregoing, the parties respectfully request that the Court approve their settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. The parties submit a Proposed Stipulation of Dismissal with Prejudice as Exhibit A to their settlement agreement.

Respectfully submitted,

__/S/ Peter A. Romero____
PETER A ROMERO, ESQ.

C:   All Counsel of Record *via* ECF

LAW OFFICE OF PETER A. ROMERO PLLC  •  LABOR AND EMPLOYMENT LITIGATION

825 Veterans Hwy, Hauppauge, New York 11788  •  (631) 257-5588  •  overtimelawny.com